Anthony Oddo v. Commissioner.
Oddo v. Commissioner
Docket No. 64319.
United States Tax Court
T.C. Memo 1960-9; 1960 Tax Ct. Memo LEXIS 279; 19 T.C.M. (CCH) 37; T.C.M. (RIA) 60009; January 29, 1960
Dermot R. Long, Esq., for the petitioner. Thomas F. Greaves, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined the following deficiencies in income tax, and additions to tax for failure to file declarations of estimated tax and for underestimation of estimated tax: Additions to Tax,
I.R.C. 1939
Sec. 294
Sec. 294
Year
Deficiency
(d)(1)
(d)(2)
1947
$25,622.51
$2,409.55
$1,606.38
1948
11,899.58
3,722.31
2,481.54
The issues are: 1. Did the respondent err in determining that petitioner had unreported income of $42,129.75 for the year 1947 and of $16,883.63 for the year 1948? 2. Did the respondent err in determining that petitioner was *280 liable for the addition to tax provided in Section 294(d)(2), Internal Revenue Code of 1939, for each of the years 1947 and 1948, for substantial underestimation of estimated tax? Another issue, relating to deductions of $1,363.04 for the year 1947, disallowed by the respondent, is conceded by petitioner because of admitted failure to substantiate these deductions. Respondent concedes that petitioner is not liable for additions to tax under Section 294(d)(1) for the years 1947 and 1948 for failure to file declarations of estimated tax. Findings of Fact Some of the facts have been stipulated and, as stipulated, they are incorporated herein by reference. Petitioner Anthony Oddo, also known as Tony Oddo, is a resident of Bakersfield, California. In 1947 and 1948, he was a resident of Chicago, Illinois. His income tax returns for those years were filed with the then collector of internal revenue for the first district of Illinois. In his return for 1947, he reported compensation received from United Produce Company (hereinafter referred to as United) in the amount of $14,840, tax withheld of $1,890.72, and tax liability in excess of withholding of $1,150.46. In his return for *281 1948, he reported the following income and withholding: Tax
With-
Income
held
United Produce Company
$16,100.00
$2,270.40
Max Feldbaum & Sons,
Inc.
3,450.00
487.60
J. Alfinito Sons, Inc.
3,600.00
508.80
Crispo Produce Wire Serv-
ice
1,500.00
201.00
Jack Oddo
35,000.00
Robert F. Blair
7,250.00
Total
$66,900.00
$3,467.80 He also reported tax due in excess of withholding of $29,459.40. Petitioner filed a timely declaration of estimated tax for the calendar year 1947 in which he declared no estimated tax for that year in excess of tax withheld or to be withheld. He filed two timely declarations of estimated tax for the calendar year 1948. In the first 1948 declaration he declared no estimated tax for that year in excess of tax withheld or to be withheld. In the second declaration he declared an estimated tax of $50 in excess of tax withheld or to be withheld. During the years 1947 and 1948, petitioner and Louis D. Rosenthal were the sole stockholders of United, a corporation engaged in the purchase and sale of produce in carload lots. Petitioner was its president, and had charge of all buying and selling. Rosenthal was its secretary, *282 handled its finances, and had charge of its office and books. United went into involuntary bankruptcy in November or December 1948. Its books and records were seized by the referee in bankruptcy and were subsequently destroyed by him pursuant to court order. During the years 1947 and 1948 United maintained branches in Philadelphia, Pennsylvania, Fresno and Bakersfield, California, New York City, and about five other cities. Some of these branches were operated in the name of United and some in other names. Each of these branches had bank accounts. The funds deposited in these accounts were supplied by United and were used principally to purchase merchandise in carload lots. During the years 1947 and 1948, United maintained two checking accounts in Chicago, one in the Central National Bank and the other in the Merchandise National Bank. It had no immediate credit at the Central National Bank. It had credit of about $400,000 at the Merchandise National Bank. During the years 1947 and 1948 it drew checks against its account in the Central National Bank knowing that it had insufficient funds in that account for their payment. These checks were sent to its branches in other cities *283 where they were deposited and the deposits used to purchase merchandise. When these checks were returned to the Central National Bank United covered the overdrafts with deposits of cash which it obtained at that time. By indulging in this practice, commonly known as "check-kiting", United had the use of funds, which did not really exist, from the time the checks were deposited by its out-of-state branches until they were returned to the Central National Bank. Gene Tufo & Co. was a Chicago firm engaged in the purchase and sale of produce in carload lots. It was owned and controlled by a man named Gene Tufo, and its office was in the same building as that of United. By "exchanging" checks with Gene Tufo & Co., United was enabled from time to time to obtain the cash to cover the overdrafts referred to above. Thus, during the year 1947 Gene Tufo & Co. issued 28 checks payable to United Produce Co. totalling $176,029.46. Notations on the Gene Tufo & Co. check stubs, with two exceptions, indicate only that the checks were issued for "United Produce". On two check stubs, one for $7,500 and the other for $8,050, the word "Loan" was inserted after the words "United Produce." In addition *284 to the foregoing checks payable to United, Gene Tufo & Co. also issued certain checks payable to petitioner and certain other checks payable to Rosenthal. Each such check was issued in exchange for a check of United payable to Gene Tufo & Co. in the same amount. During the year 1947 Gene Tufo & Co. thus issued the following checks, drawn on the First National Bank of Chicago, payable to petitioner: Check No.
Date
Amount
1414
1/30/47
$ 4,000.00
1512
4/25/47
4,900.00
1514
4/25/47
4,709.75
1715
9/18/47
3,524.00
1716
9/18/47
3,476.00
1720
9/25/47
3,600.00
1721
9/25/47
3,400.00
1730
10/ 1/47
2,343.70
1732
10/ 1/47
1,156.30
1741
10/ 3/47
2,500.00
Total
$33,609.75 These checks were received by petitioner during the year 1947, were endorsed by him, and were then either cashed by or for him or deposited in a bank by him. The following endorsements appear on the back of the checks: Check
No.
Endorsements
1414
Tony Oddo
Pay Central National Bank in Chi-
cago or Owner FOR DEPOSIT
ONLY So. Water Market Cur-
rency Exchange
Pay to the order of Any Bank or
Banker
Prior Endorsements Guaranteed
Central National Bank in Chicago
Pay to the order of Any Bank or
Banker
Prior Endorsements Guaranteed
Federal Reserve Bank of Chicago
1512
Tony Oddo
Pay to the order of Merchandise
National Bank of Chicago, Chi-
cago, Ill.
United Produce Co.
Pay to the order of Any Bank or
Banker
Prior Endorsements Guaranteed
Federal Reserve Bank of Chicago
1514
Tony Oddo
L. D. Rosenthal
Pay to the order of any Banker or
Trust Co.
Prior Endorsements Guaranteed
South Side Bank & Trust Co.,
Chicago, Ill.
Pay to the order of Any Bank or
Banker
Prior Endorsements Guaranteed
Federal Reserve Bank of Chicago
1715 *
Tony Oddo
Gene Tufo
1716 *
Tony Oddo
Gene Tufo
1720 *
Tony Oddo
1721 *
Tony Oddo
1730 *
Tony Oddo
1732 *
Tony Oddo
1741 *
Tony Oddo
*285 Petitioner did not include any part of these ten checks, aggregating $33,609.75, in the income reported in his 1947 return. Respondent, in determining the deficiency for 1947, included this amount in petitioner's taxable income for that year. The check stubs of Gene Tufo & Co. for the year 1947 disclose that the following checks were issued by it payable to Louis D. Rosenthal during that year: Check
No.
For
Date
Amount
1487
"Exchange"
4/14/47
$ 1,000.00
1488
"Exchange"
4/14/47
1,000.00
1511
"Exchange"
4/25/47
4,700.00
1513
"Exchange"
4/25/47
4,906.00
1585
" "
7/ 2/47
2,520.14
1588
"Exchange"
7/ 3/47
2,100.00
1589
"Exchange"
7/ 3/47
4,600.00
1683
"Exchange"
8/28/47
3,500.00
Total
$24,326.14
Petitioner received during the year 1947 the following checks issued by United payable to him: Check No.
Date
Amount
23511
Feb. 18, 1947
$ 200.00
24256
April 30, 1947
260.00
24466
May 13, 1947
120.00
25071
July 3, 1947
200.00
25577
Sept. 5, 1947
240.00
26005
Oct. 24, 1947
4,000.00
26006
Oct. 24, 1947
3,500.00
Total
$8,520.00
*286 These checks were signed for United by petitioner, were endorsed by him, and were either cashed by or for him or deposited in his bank account. He did not include any portion of these checks in income reported for the year 1947. In determining the deficiency respondent included the total amount of these checks ($8,520) in petitioner's taxable income for that year. Checks 23511, 24256, 24466, 25071 and 25577 were issued by United to reimburse petitioner for amounts expended by him in its behalf for travel and entertainment expenses, or as advancements for travel expenses on trips for United. Checks 26005 and 26006 represented loans made by United to petitioner in the respective amounts of $4,000 and $3,500. These amounts were charged to petitioner on the books of United and were subsequently repaid by him. Petitioner did not execute any notes to evidence this indebtedness. During the year 1948 Gene Tufo & Co. issued the following checks payable to petitioner: Check
No.
Date
Amount
1843
January 7, 1948
$ 2,500.00
1852
January 17, 1948
3,740.00
1893
February 18, 1948
3,690.00
1902
February 24, 1948
500.00
Total
$10,430.00 Respondent included the *287 total amount of these checks, $10,430, in the taxable income of petitioner for the year 1948. Check stubs maintained by Gene Tufo & Co. bear notations indicating that Check No. 1843 was an "Exchange" check and that the other three checks were issued to petitioner as loans. The notation on the check stub indicating that Check No. 1843 was an "Exchange" check was erroneous. This check and the other three checks were issued to petitioner as loans. These loans have never been repaid by petitioner. Petitioner received during the year 1948 the following checks issued by United payable to him: Check No.
Date
Amount
27102
January 24, 1948
$ 345.00
28425
April 30, 1948
61.50
28437
May 3, 1948
131.40
28438
May 3, 1948
600.00
29034
June 15, 1948
400.00
30257
August 31, 1948
400.00
30349
September 7, 1948
765.73
Total
$2,703.63 These checks were signed for United by petitioner as "President", were endorsed by him, and were either cashed by or for him or deposited in his bank account. Respondent included the total amount of the checks, $2,703.63, in the taxable income of petitioner for the year 1948. They were issued by United to reimburse petitioner *288 for amounts expended by him in its behalf for travel and entertainment expenses, or as advancements for travel expenses on trips for United. In the early part of 1948 petitioner and Rosenthal each invested $12,500 in the Crispo Produce Wire Service, and each acquired a one-third interest in that firm which thereafter engaged in business as a partnership. In August 1948, Robert F. Blair, who operated a similar wire service, was admitted into the partnership. He brought his accounts with him, and acquired a one-fourth interest. In September of 1948 differences of opinion arose as to how the business of the partnership should be operated, and petitioner and Rosenthal accepted an offer by Blair to purchase their interest for $22,000. On September 10, 1948, a check for $11,000 issued by Blair payable to Rosenthal was endorsed by Rosenthal and by petitioner and deposited in petitioner's back account at the Central National Bank. In his income tax return for 1948, petitioner reported the amount of $7,250 as income received from Blair during that year. In determining the deficiency for 1948 respondent added $3,750 to the income reported by petitioner in his return, and gave the following *289 explanation for this adjustment: "You reported $7,250.00 received from Robert F. Blair. Inasmuch as you received $11,000.00 from Mr. Blair, your income has been increased in the amount of $3,750.00 under section 22(a) of the Internal Revenue Code of 1939." In 1956 petitioner was convicted of embezzling $198,000 from the Windy City Produce Company, a Chicago produce firm in which he was sales manager. Petitioner is liable for additions to tax under the provisions of Section 294(d)(2), Internal Revenue Code of 1939, for substantial underestimation of estimated tax for the years 1947 and 1948. Opinion RAUM, Judge: 1. Gene Tufo & Co. 1947 checks. Ten checks in the aggregate amount of $33,609.75 were issued by Gene Tufo & Co. to petitioner in exchange for checks of United in the same amount payable to Gene Tufo & Co. The checks made payable to petitioner were either cashed by or for him or deposited in a bank by him. The Government contends that the exchange of checks of United for checks of Gene Tufo & Co. payable to petitioner and Rosenthal was a means whereby they diverted funds of United to themselves. Petitioner argues, on the other hand, that, as part of a check-kiting *290 operation by United, he received his checks as agent for United, that the cash proceeds of these checks were deposited in its account at the Central National Bank, and that the amount of these checks therefore did not constitute income to him. The burden of proof was upon him, and we think that burden has not been met. It is quite true, as the evidence shows, that United engaged in check-kiting activities during 1947, and that Gene Tufo & Co. had issued 28 checks totalling $176,029.46 to United which may well have been used for that purpose. But we are not convinced that the particular "exchange" checks here in controversy, payable to petitioner, were issued in connection with such activities, and that they were not part of a plan whereby petitioner diverted funds of United to himself. We are not at all satisfied on the evidence that, except for one check herein after noted, the proceeds of the checks were in fact deposited in United's account, as testified by Rosenthal. Petitioner sought to prove by his and Rosenthal's testimony that, as the agent of United, he merely endorsed the checks so that they could be cashed and that the cash proceeds found their way back to United. Their *291 testimony was in many respects vague and unsatisfactory, and a careful examination of it and other evidence in the record relating to this issue persuades us that we cannot give it full credence. Both petitioner and Rosenthal testified that the checks were cashed by an employee of United at a currency exchange. The endorsements on the back of the checks do not include the name of any employee and indicate that only one of the checks, No. 1414, was cashed at a currency exchange. Petitioner testified that he never cashed any of the checks. The endorsements on the back of the checks indicate that some, and perhaps all of them except Check No. 1512, may have been cashed by him, and the parties stipulated that the checks were either cashed by or for him or deposited in a bank by him. The endorsements on the back of Check No. 1512 indicate that this check, after being endorsed by petitioner, was deposited in the account of United at the Merchandise National Bank. Rosenthal testified that the reason the checks were made payable to petitioner rather than United was that it would have been impossible to get cash on them if they had been made payable to United because "we couldn't cash a company *292 check". But the checks here involved were checks of Gene Tufo & Co., which during 1947 had issued 28 checks payable directly to United in the total amount of $176,029.46. There is nothing to indicate that United had any difficulty obtaining the funds represented by such checks, and no convincing reason was given why the Tufo checks here in controversy could be cashed if made payable to petitioner and could not be cashed if made payable to United. The absence of any satisfactory explanation for the issuance of the "exchange" checks in his name rather than in the name of United might perhaps be overlooked if he had proved by convincing evidence that he was acting as agent of United in receiving them and that when they were cashed the cash was deposited in its bank account. This he has not done. True, Rosenthal testified that the cash proceeds of the checks were deposited in United's account at the Central National Bank to cover overdrafts, but we are not satisfied that his testimony on this point is correct. We realize of course that the books and records of United had been destroyed by the referee in bankruptcy pursuant to court order, and could not be produced to show that any cash *293 received for the Tufo checks found its way back to United and was deposited in its bank account. But there was no showing that pertinent bank records were unavailable or that petitioner could not have given this Court the benefit of testimony by the bookkeeper of United who purportedly received the cash and deposited it in United's account at the Central National Bank. He chose to rely upon the testimony of Rosenthal who was also the recipient during the year 1947 of Tufo checks payable to him in the aggregate amount of $24,326.14. After a careful consideration of all the evidence, our conclusion is that petitioner has not sustained his burden of proving that the respondent erred in including the amount of each Tufo check, with the exception of Check No. 1512, in his taxable income for 1947. Inasmuch as it appears that Check No. 1512 was deposited in the account of United at the Merchandise National Bank, we hold that the respondent erred in including the amount of that check in petitioner's taxable income for 1947. 2. Gene Tufo & Co. 1948 checks. During the year 1948 Gene Tufo & Co. issued four checks payable to petitioner in the total amount of $10,430. Both petitioner and Gene *294 Tufo testified that these checks were issued to petitioner as loans, and that these loans have never been repaid by petitioner. On Gene Tufo & Co.'s check stubs notations were made that three of these checks were issued for "loan" and that one, for $2,500, was issued for "Exchange". Gene Tufo testified that the notation that the latter check was an "exchange" check was erroneous. After carefully considering the testimony and the check stubs we have concluded and found, without strong conviction, that all four checks were issued to petitioner as loans. The amount of these checks did not constitute taxable income to petitioner in 1948. 3. United's 1947 and 1948 Checks. During 1947 petitioner received from United seven checks payable to him in the amount of $8,520.00, and during 1948 he received from United seven checks payable to him in the amount of $2,703.63. Both petitioner and Rosenthal testified that five of the 1947 checks and all of the 1948 checks were issued to petitioner as advances or reimbursements for expenses. We have found that these checks were issued for these purposes, and we hold that the amount of these checks did not constitute taxable income to petitioner. *295 Two of the checks received by petitioner from United were dated October 24, 1947, one being in the amount of $4,000 and the other in the amount of $3,500. Both petitioner and Rosenthal testified that petitioner received the proceeds of these checks; that they represented loans made by United to petitioner; that the amounts of these checks were charged to petitioner's account on the books of United; that no notes were issued to evidence this indebtedness; and that petitioner repaid the amounts he received from United as loans. Bearing in mind that petitioner was handicapped in producing additional evidence corroborating the testimony given by him and Rosenthal as to these transactions by reason of the destruction of the books and records of United by the referee in bankrupcy, we have accepted their testimony as accurate, although with some misgiving, and found that the two checks here involved were issued as loans to petitioner by United and that these loans were repaid. In the circumstances respondent erred in including the amounts of these checks in petitioner's taxable income. 4. Robert F. Blair payment. On September 10, 1948, petitioner deposited a check for $11,000 in his account *296 with the Central National Bank. This check was received from Robert F. Blair in consideration for the sale to him by petitioner of a one-fourth interest in a partnership doing business under the name of Crispo Produce Wire Service. Petitioner included $7,250 of the $11,000 in his gross income for the year 1948. Respondent determined that petitioner should have included the entire $11,000 in his income, and in determining the deficiency added $3,750 to the income reported in his return. The evidence discloses that at some undisclosed time in the "early" part of 1948 petitioner paid $12,500 for the interest in the partnership he sold to Blair for $11,000 on September 10, 1948. He therefore sustained a capital loss of $1,500 on the sale; but we cannot tell whether it was a short-term or long-term loss since the evidence does not show whether the partnership interest was held for more or less than six months. However, the only issue raised by the pleadings as to this transaction is whether respondent erred in determining that petitioner had additional income of $3,750; and since he sustained a loss, this issue must be decided in favor of petitioner. 5. The additions to tax under Section *297 294(d)(2) for 1947 and 1948 must be approved on this record, as revised downward, however, to reflect our conclusions on the foregoing issues. Decision will be entered under Rule 50. Footnotes
*. No endorsement by any individual or bank, other than those listed above, appears on the back of these checks.↩